## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MARK ROSS,                        )
                                  )
                    Plaintiff,    )
                                  )
v.                                )        Case No. CIV-08-676-M
                                  )
MICHAEL J. ASTRUE,                )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
                    Defendant.    )

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Mark Ross, seeks judicial review of a denial of disability insurance benefits (DIB) by the Social Security Administration.  This matter has been referred for proposed findings and recommendations.  *See* 28 U.S.C. § 636(b)(1)(B) and (C).  It is recommended that the Commissioner's decision be affirmed in part and reversed in part and remanded for further proceedings consistent with this Report and Recommendation.

## I.    Procedural Background

Mr. Ross filed his application for DIB on August 11, 2003, alleging an inability to work since October 20, 2000.  *See* Administrative Record [Doc. #9] (AR) at 55-57.  Mr. Ross's application was denied initially and on reconsideration.  Following a hearing, an Administrative Law Judge (ALJ) issued a partially favorable decision finding that Mr. Ross was disabled from October 20, 2000, through April 10, 2003.  The ALJ concluded that on April 10, 2003, "medical improvement occurred that was related to the ability to work," and

that Mr. Ross was not disabled after April 10, 2003.  AR 21-31.  The Appeals Council

denied Mr. Ross's request for review.  AR 7-9.  This appeal followed.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations.

*See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520.  She

first determined that Mr. Ross had not engaged in substantial gainful activity at any time

relevant to her decision.  AR 25.  At step two, the ALJ determined that Mr. Ross has the

following severe impairments:   degenerative disc disease of the lumbar spine, major

depression and anxiety disorder.  AR 25.  At step three, the ALJ found that none of Mr.

Ross's impairments meet or medically equal any of the impairments listed at 20 C.F.R. Part

404, Subpart P, Appendix 1.  AR 25.   The ALJ next considered Mr. Ross's residual

functional capacity (RFC).  She determined that from October 20, 2000, through April 10,

2003, Mr. Ross had the RFC to perform a "significantly narrowed range of 'sedentary

work,'" and that Mr. Ross was unable to perform basic work activities on a regular and

continuing basis. AR 25.  As of April 10, 2003, the ALJ found that Mr. Ross's impairments

had improved to the point that he could perform  a limited range of light work, as defined in

20 C.F.R. § 404.1567(b).[1]  The ALJ noted that Mr. Ross would not be able to perform jobs

---

[1]Mr. Ross had sustained an on-the-job injury for which he received medical treatment and a financial settlement through the workers' compensation system.  The date upon which the ALJ determined that Mr. Ross had medically improved coincides with the date on which Mr. Ross's workers' compensation doctor determined that Mr. Ross had reached "maximum medical improvement" under workers' compensation standards. *See* AR 155.

requiring repetitive motion of the lumbar spine, that he could work only in low stress environments, and that he could do only jobs requiring no more than minimal interaction with the general public. AR 25. Based on these findings, the ALJ determined at step four that Mr. Ross could not return to his past relevant work as a heating and air conditioning worker, as a custodian or as a carpenter. AR 29. At step five of the sequential evaluation process the ALJ determined that Mr. Ross had acquired unidentified skills from his past relevant work as a heating and air conditioning worker. She determined that after April 10, 2003, Mr. Ross had the ability to perform a significant number of jobs in the national economy including the skilled jobs of window builder and picture framer and the semiskilled "sedentary"[2] job of "material reporting clerk." AR 31.

## III.   Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court

---

[2]The Dictionary of Occupational Titles (DOT) actually identities "Material Clerk" as a job requiring light exertional levels. *See* DOT § 222.387-034, 1991 WL 672099.

considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## IV.   Issues Raised on Appeal

Mr. Ross asserts three propositions of error: (1) that the ALJ erred in disregarding the opinion of Mr. Ross's treating psychiatrist; (2) that the ALJ erred in ignoring the findings of the vocational expert; and (3) that the ALJ erred in failing to fully develop the record.

## V.   Analysis

### A.   The ALJ's Analysis of the Opinion of the Treating Psychiatrist

On January 14, 2005, Dr. Raj Bhupathiraju completed a Psychiatric Review Technique (PRT) form. AR 200-212.[3]   Under agency regulations, the mental limitations reported on the form, if accepted by the ALJ, would have mandated a step-three finding that Mr. Ross is presumptively disabled by his affective disorders and is unable to engage in substantial gainful employment.

A medical opinion from a  treating source is generally entitled to more weight than the opinion of a non-treating source. *See* 20 C.F.R. §§ 404.1527(d)(2). "Medical opinions" are defined as:

---

[3]The Commissioner erroneously identifies the author of this document as "a state agency evaluator." Commissioner's Brief at 5.

> statements from physicians and psychologists or other acceptable medical
> sources that reflect judgments about the nature and severity of [the claimant's]
> impairment(s), including [the claimant's] symptoms, diagnosis and prognosis,
> what [the claimant] can still do despite impairment(s), and [the claimant's]
> physical or mental restrictions.

20 C.F.R. §§ 404.1527(a); 416.927(a).

Using a sequential analysis to evaluate the opinions of treating sources, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If an opinion fails to satisfy either of these conditions, the ALJ must then determine what weight, if any, should be given to the opinion by considering (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301. The ALJ must set forth specific legitimate reasons for completely rejecting an opinion of a treating source. *Id.*

The administrative record includes a statement from Jill Melrose, a psychotherapist at the Taliaferro Community Mental Health Center, who stated in a letter dated April 14, 2004, that she had "watched Mark's depression worsen" to the point that she no longer

5

believed that it was "totally situational."  AR 227.  In a letter dated May 5, 2005, Ms. Melrose stated that she had seen Mr. Ross "on and off for crisis intervention services for the last three or four years" and that she had referred Mr. Ross to Red Rock Behavioral Health Services because she felt that he could benefit from medication for his anxiety and depression.  Ms. Melrose stated that her diagnosis would be adjustment disorder with mixed anxiety and depressed mood, and depression due to a medical condition  AR 228.

At Red Rock Behavioral Health Services, Dr. Raj Bhupathiraju became Mr. Ross's treating psychiatrist.  On June 7, 2004, Dr. Bhupathiraju diagnosed Mr. Ross with major depressive disorder and anxiety disorder, a diagnosis consistent with that of Ms. Melrose. AR 219.  The PRT form completed by Dr. Bhupathiraju diagnosed Mr. Ross with depression characterized by anhedonia, sleep disturbance, decreased energy, feelings of guilt or worthlessness and difficulty concentrating or thinking, and generalized persistent anxiety with motor tension, autonomic hyperactivity, apprehensive expectations, and a persistent irrational fear of situations which results in a compelling desire to avoid the dreaded situation.  AR 203, 205.

 In Part B of the form, Dr. Bhupathiraju stated that Mr. Ross's mental impairments have resulted in moderate restrictions in performing activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining

concentration, persistence or pace, and one or two episodes of decompensation, each of extended duration.  AR 210.[4]

In Part C[5] of the form, Dr. Bhupathiraju stated that Mr. Ross has a medically documented history of affective disorders of at least two years' duration that have caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or a change in the environment would be predicted to cause the individual to decompensate.  AR 211.[6]

On May 19, 2005, a therapist at Red Rock Behavioral Services found that Mr. Ross was still suffering from severe major depression and anxiety disorder despite his having attended all appointments, taken his medication and attended group rehabilitation services. Based on Mr. Ross's remarks, the therapist stated that Mr. Ross's ability to work has been impacted by his mental illness.  AR 232.  Although Mr. Ross had "remained stabilized and

---

[4]A claimant with an affective disorder meets the listing for affective disorders if, under the "B Criteria," he has two or more "marked" restrictions or one "marked" restriction and "repeated episodes of decompensation, each of extended duration."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B).  Dr. Bhupathiraju's findings under the "B Criteria" do not meet the requirements of a listed impairment.

[5]Part "C" of the Psychiatric Review Technique must be completed if the claimant does not meet the listing requirements under the "B Criteria."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C).

[6]Dr. Bhupathiraju's findings in Part C of the PRT form would have dictated a finding of disability at step three of the sequential process if the ALJ had given the opinion controlling weight.

made some improvement towards his [treatment] goals" the therapist stated that Mr. Ross

should continue medications and begin receiving individual rehabilitation sessions two hours

per month. *Id.*

The ALJ's mental RFC included only some of the findings of Mr. Ross's treating

psychiatrist as expressed on the PRT form:

> [C]laimant retains the functional capacity to perform the mental demands of
> basic work activities, as set forth in 20 CFR 404.1521, except for working in
> more than low stress environments [sic], due to his limited ability to handle
> more than routine changes in the workplace, with only minimal interaction
> with the public. This residual functional capacity determination is consistent
> with medical record [sic] which shows the claimant has some persistent
> problems with depression and anxiety, but that he has been stabilized with
> outpatient treatment, with improvement in his depression and concentration.
> There is no evidence that claimant has suffered an exacerbation of his
> condition since his alleged onset date, such that he required hospitalization.
> The Administrative Law Judge therefore finds that the medical
> opinions/assessments of the claimant's treating mental health specialists are
> entitled to very little weight – to the extent they are inconsistent with the
> [remainder of sentence missing].

AR 28.[7]   The ALJ adopted the treating psychiatrist's "B Criteria" findings except for the

finding that Mr. Ross had experienced repeated episodes of decompensation.  AR 29.  As for

the "C Criteria" the ALJ stated simply that she "finds there is insufficient evidence to

establish the C Criteria."  *Id.*

The required level of severity for meeting the listing of an affective disorder under the

"C Criteria" is met if there is:

---

[7]In his brief, the Commissioner states that the ALJ rejected the treating psychiatrist's
assessment "to the extent that it was inconsistent with the ALJ's residual functional capacity
finding." Commissioner's Brief at 5-6.

C. Medically documented history of a chronic affective disorder of at least 2
years' duration that has caused more than a minimal limitation of ability to do
basic work activities, with symptoms or signs currently attenuated by
medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that
even a minimal increase in mental demands or change in the environment
would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly
supportive living arrangement, with an indication of continued need for such
an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C).  As discussed above, Dr. Bhupathiraju was

of the opinion that Mr. Ross met the criteria listed in 12.04(C)(2).[8]  There is no evidence in

the record which contradicts this finding.  The ALJ apparently agreed that Mr. Ross could not

perform a job requiring more than routine changes or minimal interaction with the public.  AR

28.  The ALJ noted that Mr. Ross has not required hospitalization for his mental problems and

that with medication and counseling he has made some improvement.  These findings are not,

however, inconsistent with the treating psychiatrist's assessment that Mr. Ross's residual

disease process and resulting marginal adjustment would result in decompensation with even

minimal increases in mental demands or changes in environment.  Thus, the ALJ adopts parts

of the treating psychiatrist's opinion and rejects other parts without adequate explanation.

"An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking

---

[8]Significantly, the listing at 12.04(C)(2) does not require evidence of decompensation in the
past.

9

only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted).

The ALJ erred in failing to provide sufficient reasons for not giving the treating psychiatrist's opinion controlling weight. Moreover, the ALJ did not sufficiently discuss the factors underlying her determination that the opinion was "entitled to very little weight[.]" For these reasons, this case should be remanded for further proceedings.

### B.    The ALJ's Assessment of Vocational Expert Testimony

Mr. Ross contends that the ALJ erred in "ignoring the findings of its own vocational expert." Opening Brief at 23. Specifically, Mr. Ross states that the ALJ should have found him disabled based on the vocational expert's testimony that a 20% or even a 10% interference with concentration, persistence and pace caused by pain would preclude employment. The pertinent testimony was elicited by both the ALJ, who proposed the 20% interference, and Mr. Ross's attorney, who posed the question assuming a 10% interference. AR 257, 261. This limitation was not, however, included in the ALJ's final RFC assessment. "A vocational expert's testimony may provide a proper basis for an ALJ's determination at step five only when a claimant's impairments are adequately reflected in the hypotheticals posed to the expert." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991). But an ALJ is required to ask only hypothetical questions encompassing impairments that find support in the record. *See Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir.1999). It follows, then, that an ALJ is not required to accept the testimony of a VE when the VE is responding to a hypothetical question that contains restrictions which the ALJ does not ultimately include in

10

the RFC.  On remand, the Commissioner will have the opportunity to re-assess Mr. Ross's RFC after reconsidering and properly evaluating the opinion of Mr. Ross's treating psychiatrist.

### C.    The ALJ's Duty to Develop the Record

Mr. Ross contends that the ALJ failed to properly develop the record in that: (1) the ALJ failed to properly consider the medical report of Dr. Metcalf; and (2) the ALJ failed to properly question Plaintiff regarding his pain and his ability to perform light work.

Mr. Ross contends that the ALJ should have given more consideration to the opinion of Dr. Metcalf regarding Mr. Ross's physical RFC.  Dr. Metcalf had referred Mr. Ross to Dr. Hisey for back surgery.  Dr. Metcalf examined and evaluated Mr. Ross on April 21, 2003. Dr. Metcalf stated that Mr. Ross continues to have chronic low back pain and bilateral leg pain.  AR 184.  He stated that Mr. Ross had sustained some permanent impairments and that he would need medical maintenance for pain medication.  *Id.*

The ALJ gave controlling weight to the opinion of Dr. Hisey, Mr. Ross's treating physician.[9]  In his April 10, 2003, letter to the Workers' Compensation Court, Dr. Hisey stated that Mr. Ross had completed a work hardening program, that he would be restricted to lifting a maximum of 40 pounds, that he could not withstand repetitive motion of the lumbar spine,

---

[9]Both Dr. Metcalf and Dr. Hisey were of the opinion that Mr. Ross would need vocational retraining before he would be able to re-enter the work force.  *See* AR 155, 183-184.  Although Mr. Ross actually completed a course in computer aided design, he testified that he could not perform a job requiring the skills he had apparently been taught because he had missed several classes because he was struggling with depression.  AR 247-248.  The ALJ did not include jobs requiring computer aided design skills in her findings at step five.

and that he would require vocational retraining to find employment.  Dr. Hisey stated that Mr. Ross continued to have pain in his feet, back and legs, but that he had reached "maximum medical improvement" for purposes of the workers' compensation proceedings and had been released from Dr. Hisey's care. AR 155.

Based on Dr. Hisey's statements, including the statement that Mr. Ross had achieved maximum medical improvement, the ALJ concluded that "Medical improvement occurred as of April 10, 2003."  Dr. Hisey's finding of maximum medical improvement alone is not, however, a dispositive finding of nondisability.  *See Jones v. Barnhart*, 53 Fed. Appx. 45, 47 (10th Cir. Dec. 13, 2002) (workers' compensation proceedings are entirely different and separate from a claim under the Social Security Act, with different parties, different evidentiary standards, and different bodies of law).  The ALJ's decision does not clearly state the basis of her finding medical improvement on April 10, 2003.  Relying solely on Dr. Hisey's statement that Mr. Ross had reached maximum medical improvement to determine that Mr. Ross is not disabled would be error on the part of the Commissioner.  On remand, the Commissioner should not rely solely on findings of doctors relayed to the workers' compensation court in determining whether  Mr. Ross's physical condition has improved for purposes of his application for disability benefits under the Social Security Act.

Mr. Ross also challenges the ALJ's failure to question him about the exact nature of his pain or about the length of time he can comfortably sit.  The Tenth Circuit has stated that "[p]recisely how long a claimant can sit without a change in position is also relevant to assumptions [about] whether he can perform light work."  *Vail v. Barnhart*, 84 Fed. Appx. 1,

5 (10th Cir. Nov. 26, 2003) (unpublished op.) (*citing* 20 C.F.R. § 404.1567(b)).  Although the ALJ elicited some testimony from Mr. Ross concerning his pain, she did not question him about how long he can sit comfortably without changing positions.  When his attorney attempted to elicit testimony regarding Mr. Ross's pain, the ALJ stopped the questioning by stating, "that's pretty clear on the record[.]" AR 250.  On remand, the ALJ will have the opportunity to question Mr. Ross further regarding his pain and its impact on how long he can sit comfortably.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed as to the finding of disability through April 10, 2003.  It is further recommended that this case be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by May __4th__, 2009.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __13th__ day of April, 2009.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE